UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRANDON EDELMAN | Case No. 3:18-CR-68-CCB-SJF |

## OPINION AND ORDER

Before the Court is Plaintiff Brandon Edelman's ("Mr. Edelman") Motion to Vacate, Set Aside, or Correct Sentence. (ECF 162). Based on the applicable law, facts, and arguments, the Motion to Vacate, Set Aside, or Correct Sentence is **DENIED**.

### I.   RELEVANT BACKGROUND

In the early morning hours of April 27, 2018, Mr. Edelman was driving around South Bend with his girlfriend, Rachel McCoy ("Ms. McCoy"), in a stolen vehicle. (ECF 142 at 27). South Bend Police initiated a traffic stop after identifying the vehicle. (*Id.* at 38). Mr. Edelman pulled over at first, and then fled the scene, leading the officers on a thirteen-minute-high speed chase. (*Id.* at 103, 40). During the chase, Ms. McCoy threw a gun, 113.4 grams of methamphetamine, and $20,000 of cash out the window, all of which was later recovered. *United States v. Edelman*, 844 F. App'x 900, 903 (7th Cir. 2021). After his vehicle was disabled, Mr. Edelman exited the vehicle and attempted to flee on foot but was quickly apprehended. (ECF 142 at 42). Mr. Edelman had eight grams of methamphetamine in his pocket at the time of his arrest. (*Id.* at 99).

Mr. Edelman was taken first to Memorial Hospital to be examined for an injury to his knee sustained during his attempt to evade arrest and then to the jail. (*Id.* at 45). While being interviewed by officers at the jail, Mr. Edelman said that he was a "heavy hitter in the ice [(crystal methamphetamine)] game," and that he was dealing earlier that night. *Edelman*, 844 F. App'x at 903.

On June 13, 2018, Mr. Edelman was indicted for possession with intent to distribute methamphetamine, possessing a firearm during and in relation to a drug trafficking crime, and possessing a firearm as a felon. (ECF 1). Mr. Edelman was originally represented by Peter Boyles, but he withdrew a few days later. (ECF 8, ECF 12). Attorney Philip Skodinski ("Mr. Skodinski") was then appointed on June 25, 2018. (ECF 15).

On July 9, 2018, copies of officers' dash cam footage of the chase and Mr. Edelman's roughly four-hour video interview were provided to Mr. Skodinski. (ECF 34 at 1). Mr. Edelman alleges that Mr. Skodinski was never able to view the videos in their entirety due to technological difficulties and a lack of trying. (ECF 162 at 12). He alleges that early in the case, Mr. Skodinski went to the AUSA office and viewed parts of both videos, but was only there for 30-60 minutes and took no notes. (*Id.*). This was allegedly the only time that Mr. Skodinski reviewed the videos. (*Id.*) Mr. Edelman informed Mr. Skodinski that he did not recall much of the night in question, April 26-27th, 2018, due to drug use and sleep deprivation and wanted to review the discovery before deciding whether to accept a plea deal or not. (*Id.* at 13).

Mr. Edelman wrote to the Court on October 18, 2018, alleging that there was a "serious breakdown of communications" between himself and Mr. Skodinski stemming from the fact that Mr. Skodinski brought him "a plea bargain expecting [him] to make a choice on whether to sign a plea or take it to trial, without even seeing" his discovery. (ECF 27 at 2,3). This letter is the first of four letters Mr. Edelman sent the Court before trial alleging ineffective assistance of counsel because Mr. Skodinski did not view the video discovery in full or successfully show Mr. Edelman any of his video discovery. (ECF 27, 47, 54, 62). In these letters, Mr. Edelman asked for either the appointment of new counsel or for the Court to allow him to represent himself because in addition to not showing him the discovery, Mr. Skodinski also failed to retrieve a potentially exculpatory letter from Ms. McCoy that was confiscated at the jail (ECF 27 at 5), failed to file necessary motions (*Id.*), and kept "trying to get [him] to plead out" (ECF 47 at 1). The Court held several hearings on the letters received from Mr. Edelman asking for a change of counsel or to go pro se. (ECF 31, 49). Mr. Edelman's motions to go pro se were denied. (ECF 70).

On October 31, 2018, Mr. Skodinski moved to suppress the interrogation video on the basis that Mr. Edelman was not mentally competent during the interrogation because he was concussed and under the influence of methamphetamine. (ECF 29). The Court set a hearing on the motion for November 21, 2018. (ECF 30). The morning of the hearing, Mr. Edelman moved to continue which was granted. (ECF 36, 38). Three days before the new hearing date, however, Mr. Edelman moved to withdraw the motion to suppress, which was granted. (ECF 53, 55). At a later hearing, Mr. Skodinski explained

3

why he withdrew the motion, "I guess I can say, in my viewing of the video, I didn't think it was a good idea to challenge the suppression of the video." (ECF 140 at 34-35, 36).

After being continued several times, the trial was finally set for February 6th and 7th of 2019. (ECF 75).

On February 1, 2019, the government proposed to bring Mr. Edelman to the AUSA office and allow him to view the sections of the videos the government intended to introduce at trial. (ECF 140 at 22). Mr. Skodinski was present as well and Mr. Edelman and Mr. Skodinski were instructed to watch the videos as many times as needed and then after viewing, they would be brought to an attorney consultation room to discuss privately. (*Id.* at 22-23) (ECF 139 at 10). Mr. Edelman refused to watch the video. (*Id.*). The morning of the trial, Mr. Edelman viewed the videos the government intended to introduce at trial during the motion in limine discussions. (ECF 142 at 7).

At trial, the jury found Mr. Edelman guilty on all three counts. (ECF 76). After the trial, Mr. Edelman wrote to the Court an additional four times reiterating his belief that his rights were violated because he had still not seen the videos of his discovery and restating his desire to either have Mr. Skodinski replaced or represent himself pro se at sentencing. (ECF 84, 88, 90, 95, 125). The Court also held a hearing on these letters and ultimately denied Mr. Edelman's request for self-representation. (ECF 92)

Mr. Skodinski filed motions to withdraw as attorney on February 18, 2019, and April 15, 2019 (ECF 85, 96). The Court denied both motions. (ECF 87, 98). Mr. Edelman filed another motion to represent himself on April 22, 2019. (ECF 100). The Court

4

granted the motion for Mr. Edelman to represent himself at a hearing on the issue on May 1, 2019. (ECF 106). A few months later, on August 2, 2019, Mr. Edelman wrote the Court again, requesting Mr. Skodinski be reappointed to his case. (ECF 116). The Court reappointed Mr. Skodinski to Mr. Edelman's case in anticipation of sentencing. (ECF 117). On December 16, 2019, Mr. Edelman was sentenced to 408 months imprisonment. (ECF 133).

Mr. Skodinski filed yet another motion to withdraw on February 4, 2020, which the Court granted. (ECF 145). Mr. Edelman appealed his conviction, but the Court of Appeals dismissed the appeal on February 8, 2021.

On November 5, 2021, Mr. Edelman filed this Motion to Vacate under 28 U.S.C § 2255 on three grounds. (ECF 162). First, Mr. Edelman argues that Mr. Skodinski denied him effective assistance of counsel. (ECF 162 at 12). Mr. Edelman alleges that Mr. Skodinski failed to provide him the opportunity to view his video discovery, causing him to reject a plea agreement and go to trial where he lost and was eventually sentenced to a term roughly three and a half times longer than the plea. (*Id.*) (ECF 169 at 5). Additionally, Mr. Edelman alleges that Mr. Skodinski's failure to properly prepare for the suppression hearing caused him to withdraw the motion to suppress against Mr. Edelman's wishes. (*Id.* at 21). Mr. Edelman also alleges Mr. Skodinski was ineffective for not investigating or calling Ms. McCoy as a witness. (ECF 162 at 26). Second, Mr. Edelman argues that there was insufficient evidence to convict him of possessing a firearm as a felon. (*Id.* at 29-30). Finally, on the third ground for relief, Mr. Edelman argues that the government employed selective and vindictive prosecution against him

5

because Ms. McCoy was not charged or prosecuted. (*Id.* at 32-34). In sum, Mr. Edelman urges the Court to vacate his sentence because his Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated. (ECF 162 at 2, 3, 5).

## II.    ANALYSIS

28 U.S.C.A. § 2255 says that the court shall grant a prompt hearing to determine the issues and make findings of fact and conclusions of law, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C.A. § 2255 (West). Relief under § 2255 is only available "in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Harris v. United States,* 13 F. 4th 623, 627 (7th Cir. 2021) (quoting *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014)).

### A.    Ground 1: Ineffective Assistance of Counsel

The Sixth Amendment recognizes the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970). In judging a claim of ineffectiveness, the benchmark is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A defendant bringing a claim of ineffective assistance of counsel must show that "counsel's representation fell below an objective standard of reasonableness and that the deficiencies in the counsel's performance were prejudicial to the defense." *Id.* at 687, 692. A court should analyze the reasonableness of counsel's performance against

6

prevailing professional norms while trying to eliminate the effects of hindsight. *Id.* at 688, 689. A defendant must also overcome the presumption that the challenged conduct "might be considered sound trial strategy." *Id.* at 689. For the prejudice prong, a defendant must show that there is a reasonable probability that without the errors, the outcome would have been different. *Id.* at 695. It is not necessary to determine first "whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," because a defendant's failure to prove either prong is fatal to his claim. *Id.* at 697; *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993).

### 1. Video Discovery

The Sixth Amendment right to effective counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). In the context of plea-bargaining, a defendant must show that counsel's performance fell below an objective standard of reasonableness, and but for the deficient performance,

> there is a reasonable probability that the plea offer would have been presented to the court . . . that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 164. A reasonably competent lawyer, during the plea-bargaining stage, "must attempt to learn all of the relevant facts of the case." *Brock-Miller v. United States*, 887 F.3d 298, 308 (7th Cir. 2018) (quoting *Spiller v. United States*, 855 F.3d 751, 755 (7th Cir. 2017)).

7

Here, Mr. Edelman argues that Mr. Skodinski failed to provide competent, informed advice regarding the weight of the evidence against him. (ECF 162 at 12). In failing to properly advise him and failing to show Mr. Edelman the video discovery, Mr. Edelman argues he rejected plea discussions and instead went to trial where portions of the video discovery was shown, partially due to Mr. Skodinski's ill-informed decision to withdraw a motion to suppress. (*Id.* at 21). The government does not argue Mr. Skodinski's performance regarding the video discovery was reasonable, but rather focuses on the prejudicial prong, stating that "Edelman suffered no prejudice." (ECF 167 at 8).

Mr. Skodinski's inability to review the video discovery for longer than half an hour in the over 200 days between being appointed Mr. Edelman's counsel on June 25, 2018, and trial on February 6, 2019, is unreasonable when weighed against prevailing professional norms. (ECF 15, 75). The codified standards of professional practice do not solely determine counsel's performance, but they can be an important guide. *Missouri v. Frye*, 566 U.S. 134, 145 (2012). As Mr. Edelman points out, Mr. Skodinski has an obligation under the Indiana Rules of Professional Conduct to maintain competence by keeping "abreast of changes in the law and its practice, including the benefits and risks associated with the technology relevant to the lawyer's practice." (ECF 162 at 24) Ind. Professional Conduct Rule 1.1. Additionally, the rules require "inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners." *Id.* Mr. Skodinski only reviewed the hours of video discovery for a short amount of time, on one occasion, and

8

did not take any notes, allegedly because he did not own or know how to use a laptop in 2018 and 2019. (ECF 162 at 12, 18, 25). Prevailing professional norms would likely require counsel to figure out how to view discovery, or seek help in doing so, for a client facing decades in prison at some point during the counsel's representation of the defendant. Mr. Skodinski did not attempt to learn all the relevant facts of the case here, which a reasonably competent lawyer should have done. *Brock-Miller*, 887 F.3d at 308.

Even though Mr. Skodinski's inability to properly view the video discovery was deficient, Mr. Edelman fails on the prejudicial prong. Mr. Edelman must show that the outcome of the plea process would have been different with competent advice, there is a reasonable probability that the plea offer would have been presented to the court, the court would have accepted it, and that the sentence would have been less severe than the judgment imposed. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012).

Mr. Edelman cannot show that the outcome of the plea process would have been different with competent advice. Mr. Edelman told the Court on several occasions prior to trial that he "would have liked to maybe have taken a plea, but couldn't because as my right I wanted to see all and any evidence that the AUSA had against me." (ECF 90 at 2). However, there is no general constitutional right to discovery in a criminal case. *United States v. Vargas*, 915 F.3d 417, 421 (7th Cir. 2019). The Supreme Court has said that due process has "little to say" about the amount of discovery a criminal defendant is entitled to. *Wardius v. Oregon,* 412 U.S. 470, 474 (1973). The Federal Rules of Criminal Procedure do require the government to disclose to the defendant, and make available for inspection, "any relevant written or recorded statement by the defendant if the

9

statement is within the government's possession, custody, or control." Fed. R. Crim. P. 16. The government did so, however, when they provided an opportunity for Mr. Edelman to review the video discovery himself before trial, which Mr. Edelman refused. (ECF 139 at 8).

Additionally, on all occasions when Mr. Skodinski attempted to discuss plea agreements with Mr. Edelman, Mr. Edelman told him "I want to go to trial," and "[d]on't bring me any more pleas." (ECF 97 at 7, 8). Mr. Edelman grew so frustrated by Mr. Skodinski's repeated efforts to get him to consider a plea that Mr. Edelman asked for new counsel on multiple occasions. (ECF 90, 97, 139 at 8). Based on this well-established record of Mr. Edelman's disinterest in discussing a plea without first viewing "all and any evidence that the AUSA had against [him]," at his convenience, Mr. Edelman cannot prove that he would have accepted a plea offer. (ECF 90 at 5).

Finally, Mr. Edelman fails to prove Mr. Skodinski's deficient performance prejudiced his plea process because the government never formally offered Mr. Edelman a plea. (ECF 167 at 8). Mr. Edelman argues that after he viewed portions of video discovery the morning of the trial, he would have signed a plea if Mr. Skodinski had advised him properly. (ECF 162 at 23). While the government had discussed the possibility of offering Mr. Edelman a guilty plea, Mr. Edelman admits he had previously shut down all conversations relating to a plea. Therefore, the government never extended a formal plea agreement and Mr. Edelman cannot prove that there is a reasonable probability that the plea agreement would have been offered to the Court at any point, let alone the morning of trial. (*Id.*)

10

Mr. Edelman cannot show that even with competent performance the outcome of the plea process would have been different because he cannot show that there is a reasonable probability that he would have accepted a plea offer or that the plea offer would have been presented to the Court. Therefore, his ineffective assistance of counsel claim fails as to the video discovery argument.

### 2. Motion to Suppress

Mr. Edelman also argues that Mr. Skodinski denied him effective assistance of counsel because Mr. Skodinski withdrew the motion to suppress and did not investigate background facts enough. (ECF 162 at 21). Mr. Edelman must overcome the presumption here that Mr. Skodinski's decision to withdraw the motion to suppress was not sound trial strategy, but rather was conduct below an objective standard of reasonableness and that was prejudicial to his defense. *Strickland*, 466 U.S. at 689, 687.

The government argues that Mr. Edelman is barred from making this argument because he did not pursue the argument on direct appeal. (ECF 167 at 9). The Supreme Court has held that "An ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Since Mr. Edelman is challenging the effectiveness of Mr. Skodinski here, not the merits of the withdrawn suppression motion, Mr. Edelman is not barred from making this argument. The argument still, however, fails on the merits.

Mr. Edelman argues that he never agreed to withdraw the motion to suppress and Mr. Skodinski "never did his job in getting the material for the hearing and was ill-

11

prepared." (ECF 162 at 21). The government, however, argues that Mr. Edelman "cannot show that Mr. Skodinski's performance on this issue was deficient, or that there was any prejudice resulting from the withdrawal of the suppression motion." The Court agrees. Mr. Skodinski told the Court at a hearing:

> I didn't think it was a good idea, once I – and the adverse consequences of pursuing something that was going to end up being denied and how that might affect his sentencing guidelines, and that I didn't think it was a good idea. I may have been wrong about that, but that's why we withdrew it.

(ECF 140 at 36). Mr. Skodinski stated that he did not think the motion to suppress was a good idea and "strategic choices must be respected" when they are based on professional judgment. *Strickland*, 466 U.S. at 681. Mr. Edelman thus cannot establish that the challenged action of withdrawing the motion to suppress was not sound trial strategy. The analysis can stop there because Mr. Edelman's allegations have not overcome the necessary presumption and therefore his ineffective assistance of counsel claim fails as to the motion to suppress as well.

### 3. Failure to Investigate or Call Ms. McCoy as a Witness

Mr. Edelman finally argues that by not investigating or calling Ms. McCoy as a witness, Mr. Skodinski denied him effective assistance of counsel. (ECF 162 at 26). Mr. Edelman must again overcome the presumption that the decision to not call Ms. McCoy at trial was not sound trial strategy and constituted conduct that falls below an objective standard of reasonableness that was prejudicial to his defense. *Strickland*, 466 U.S. at 689, 687. As well, because Mr. Edelman alleges Mr. Skodinski was deficient for a failure to investigate, he must "allege what the investigation would have produced." *Long v.*

12

*United States*, 847 F.3d 916, 920 (7th Cir. 2017) (quoting *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004)). Mr. Edelman does not reveal what her testimony would have been or how it could have helped his chances at trial. This failure to allege details regarding what further investigation would produce is lethal to his claim.

Mr. Edelman also alleges that Mr. Skodinski "failed to obtain a letter that Ms. McCoy wrote [him], while [they] both were in jail." (ECF 162 at 26). He alleges that Mr. Skodinski "tried to file a motion to vacate judgment on 12-12-2019 based on Rachel McCoy's statement in her letter." (*Id.*). The motion to vacate judgment filed on December 12, 2019, centered around "newly discovered evidence" that Ms. McCoy pleaded guilty for possession of methamphetamine from the night in question, and did not mention any letter. (ECF 130 at 1). Regarding the letter, in fact, the Court has held that "Ms. McCoy's statement in the letter is vague, inconclusive, and a far cry from an admission of guilt, as Mr. Edelman contends." (ECF 115 at 2). As the government points out, the Seventh Circuit also stated that "Edelman did not show that McCoy's letter, plea, or even testimony would likely have resulted in his acquittal." *Edelman*, 844 Fed. Appx. 900, 905 (7th Cir. 2021). Mr. Edelman has not alleged any new facts or a different argument regarding Ms. McCoy's ability to affect his conviction. Mr. Edelman has thus not overcome the presumption that not calling Ms. McCoy was a trial strategy, or established that not calling Ms. McCoy at trial prejudiced his defense. Therefore, Mr. Edelman's ineffective assistance of counsel claim fails as to Ms. McCoy.

Mr. Edelman's arguments for ineffective assistance of counsel on the video discovery, the motion to suppress, and for failing to investigate or call Ms. McCoy do

13

not meet the *Strickland* two-part analysis. The facts here also do not rise to the level of an "extraordinary situation" where a fundamental defect resulted in a "complete miscarriage of justice." *Harris,* 13 F. 4th at 627. Therefore, Mr. Edelman's Motion to Vacate is DENIED as to Ground 1.

### B. Ground 2: Insufficient Evidence

Mr. Edelman also argues that his Fifth, Eighth, and Fourteenth Amendment rights were violated and therefore his conviction should be vacated under § 2255 because the evidence convicting him for possession of a firearm as a felon under 18 U.S.C. § 922(g)(1) was insufficient. He alleges that he "was never told [he] couldn't be around someone that was under federal law legally allowed to own and possess a firearm," and "it was the passenger's firearm," not his. (ECF 162 at 29). First, the idea that ignorance of the law "is no defense to criminal prosecution is deeply rooted in the American legal system." *Cheek v. United States*, 498 U.S. 192, 199 (1991). Second, Mr. Edelman tried to argue at trial that the gun was not his and the jury was not convinced, finding him guilty of possession of a firearm beyond a reasonable doubt. (ECF 167 at 12). The government is also correct that these arguments have already been raised, and dismissed, by the Court of Appeals. The court there held that sufficient evidence supported his conviction for possessing a gun and even if they thought the gun was not his, at the very least there was sufficient evidence that he aided and abetted Ms. McCoy. *Edelman,* 844 Fed. Appx. at 904.

Mr. Edelman has not established that there was an error of constitutional magnitude that caused a fundamental defect resulting in a "complete miscarriage of

justice" here. *Harris,* 13 F. 4th at 627. Rather, the motion, files, and records of this case conclusively show that Mr. Edelman is entitled to no relief and therefore, his Motion to Vacate is DENIED as to Ground 2.

### C. Ground 3: Selective and Vindictive Prosecution

Mr. Edelman finally argues that his Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated because he was subjected to selective and vindictive prosecution and therefore, his conviction should be vacated. (ECF 162 at 5). To bring a claim of selective and vindictive prosecution, a defendant "must affirmatively show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus, such as a personal stake in the outcome of the case or an attempt to seek self-vindication." *United States v. Bullis,* 77 F.3d 1553, 1559 (7th Cir. 1996).

Here, Mr. Edelman alleges that the "AUSA picked and choosed what items he wanted to use for his case against me," and he was discriminated against "because I was the male of the alleged criminal partnership," and because of his "past." (ECF 162 at 32). Mr. Edelman alleges that Ms. McCoy was not charged in federal court because she is a woman. (*Id.*) The government, on the other hand, argues that Mr. Edelman is barred from raising this issue because it was not raised on direct appeal. (ECF 167 at 13) (citing *Chappell v. United States*, 956 F.2d 272 (7th Cir. 1992)). The Court agrees that Mr. Edelman is barred from arguing selective and vindictive prosecution because it was not raised during direct appeal and Mr. Edelman did not show cause.

15

Even if Mr. Edelman was not barred from making this argument, the argument would still fail because Mr. Edelman does not affirmatively show that the prosecution was motivated by any form of prosecutorial animus. *Bullis,* 77 F.3d at 1559. The government notes that Mr. Edelman confessed to being a "heavy hitter" in the methamphetamine world and was convicted at trial by an "overwhelming" amount of evidence. (ECF 167 at 13). No evidence suggests that the prosecution was motivated improperly.

Mr. Edelman's argument that he was subjected to selective and vindictive prosecution fails. Therefore, Mr. Edelman's Motion to Vacate is DENIED as to Ground 3.

### III.    CONCLUSION AND CERTIFICATE OF APPEALABILITY

The motion, the briefs, and the record of Mr. Edelman's case conclusively show that Mr. Edelman is entitled to no relief, therefore, no hearing is required. 28 U.S.C.A. § 2255 (West). The facts of Mr. Edelman's case do not rise to the level of an extraordinary situation resulting in a complete miscarriage of justice. For the reasons discussed above, the Court DENIES Mr. Edelman's Motion to Vacate (ECF 162).

Mr. Edelman also filed a series of motions related to his Motion to Vacate, including: a Motion for Court Appointed Counsel (ECF 163), a Motion for Case File from Counsel (ECF 175), a Motion for Discovery Material (ECF 176), a Motion for Records (ECF 177), a Motion for Status Report or Hearing (ECF 179), a Motion to Compel Attorney Skodinski to Surrender Case File (ECF 180), and another Motion for

Status Report or Hearing (ECF 182). These motions are all DENIED AS MOOT. (ECF 163, 175, 176, 177, 179, 180, 182).

On May 16, 2022, Mr. Edelman filed a Motion to File Supplemental Brief, which he filed on August 14, 2023. (ECF 178, 181). Mr. Edelman's Motion to File Supplemental Brief is GRANTED and the Supplemental Brief filed on August 14, 2023, (which only supplied the Court with more case law) was reviewed by the Court, and does not change the Court's analysis at all.

Pursuant to 28 U.S.C.A. § 2255 Rule 11, the Court must grant or deny a certificate of appealability. SECT 2255 Rule 11. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that a reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this order, there is no basis for encouraging Mr. Edelman to proceed further. Accordingly, the Court DENIES a certificate of appealability pursuant to § 2255 Rule 11. SECT 2255 Rule 11.

SO ORDERED on March 31, 2025.

                                                  /s/*Cristal C. Brisco*
                                                  CRISTAL C. BRISCO, JUDGE
                                                  UNITED STATES DISTRICT COURT